## Maggie Gents, Appellee, v. Spring Valley Coal Company, Appellant.

### Gen. No. 15,102.

1. NEGLIGENCE—*failure to guard electric wires.* It is the duty of a traction company employing electric wires to use reasonable care to protect the public against danger from injury. The care to be observed should be commensurate with the danger and failure to exercise such care constitutes actionable negligence.

2. VERDICTS—*when not excessive.* A verdict for $12,750 rendered in an action on the case for personal injuries in favor of a minor, a girl, is not excessive where it appears that the plaintiff's hand was severely burned and there were slight burns on other parts of her body; that as a result of the injury to the hand parts of three fingers were amputated, the little finger became attached to the palm of the hand, and a loss of control over the thumb resulted; that since the accident her health has been impaired; that she suffered from severe headaches, nausea and frequent vomiting and does not sleep well.

Action in case for personal injuries. Appeal from the Superior court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in court at the October term, 1908. Affirmed. Opinion filed June 2, 1910. Rehearing denied June 16, 1910.

MASTIN & SHERLOCK and FRANK CROZIER, for appellant.

ELMER & COHEN, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

Appellee, a minor, suing by her next friend, brought an action on the case against appellant and the Illinois Valley Railway Company to recover for personal injuries sustained by her by coming in contact with a telephone wire of the Coal Company which had become charged with a dangerous current of electricity through contact with a trolley wire of the Railway Company. At the close of the evidence and before the instructions were read to the jury, plaintiff dismissed as to the Railway Company. The jury found the defendant

Coal Company guilty, assessed plaintiff's damages at $12,750, and from a judgment on the verdict that Company prosecutes this appeal.

The Railway Company operated in Dakota street in Spring Valley an electric street railway with an overhead trolley wire carrying 500 volts, a current of electricity dangerous to human life. The Coal Company had on the east side of Spalding avenue a telephone wire leading from its office to its mine, which crossed Dakota street three or four feet above the trolley wire of the Railway Company. There was a telephone pole at the northeast corner, another at the southeast corner of said street and avenue, and a third on the east side of Spalding avenue 157 feet south from the pole at said northeast corner. From the evidence the jury might properly find that the telephone wire was not attached to or supported by the pole at said southeast corner. On the other two poles were cross arms, to which were attached glass insulators. The telephone wire was fastened to said insulators by wires called tie wires. Between the pole on Spalding avenue and Dakota street were several tall trees, through the branches of which the wire passed. It broke a few inches north of the pole on Spalding avenue, and the end of the wire hung down near the sidewalk on Spalding avenue. Neither the trolley wire nor the telephone wire was insulated, nor was there any guard wire or other wire or appliance to prevent the telephone wire in case it broke from coming in contact with the trolley wire, and when the telephone wire broke it did come in contact with the trolley wire and thereby became charged with a dangerous current of electricity. Plaintiff, a girl of eleven years of age, was passing along the sidewalk on Spalding avenue when her hand came in contact with the telephone wire and thereby she received the injuries complained of.

The negligence alleged against appellant in the first count of the declaration is, that it negligently, etc., per-

mitted its telephone wires to become loose and to fall
on and across the highly charged wire of the Railway
Company so that its wires became charged with a
deadly current of electricity and fell on and across a
public street, etc.; that alleged in the second count is,
that it negligently, etc., permitted its telephone wire
to come in contact with the heavily charged wire of the
Railway Company and to fall on the street, etc.; that
alleged in the third count is, that it negligently, etc.,
failed and neglected to properly guard or protect its
wires from coming in contact with the heavily charged
wire of the Railway Company; that alleged in the ad-
ditional count is, that it did so negligently, etc., sup-
port, tie and keep its telephone wires that same were
in constant danger of breaking and falling on the pub-
lic street, etc., and coming in contact with said Rail-
way Company's wire and thereby impart to said wires
falling on said street a dangerous current of electric-
ity, etc.

We see nothing in the remarks or conduct of counsel
for plaintiff, or of counsel for the Railway Company,
to justify or warrant a reversal of the judgment. Nor
do we find any reversible error in the rulings of the
court on the evidence or the instructions.

It appears from the evidence that telephone wires
are liable to break at any time. The wire which broke
was a copper wire 14 Birmingham gauge. Hill, the
manager of a telephone company, a witness for appel-
lant, testified that he had seen lots of copper wires of
that description break when it was up. Hetzner, a line
man of another telephone company, a witness for ap-
pellant, testified that telephone "wires are liable to
break at any time." The evidence for the plaintiff
was that it was proper and usual, when a telephone
wire crossed over a trolley wire in a public street, to
attach such wire to poles on each side of the street, and
to fasten such wires to the insulation on the poles by
means of tie wires in such manner as that if the wire
broke it would not slip through the loop or fastening

made with such tie wires. The testimony for the Coal Company was that spans of 150 feet or longer were usual, and that it was not proper or practicable to fasten a telephone wire to an insulator with tie wires in such manner as that such wire would not slip through the loop or fastening; that to do so would tend to kink the telephone wire and cause it to break.

While there is some conflict in the testimony, the jury might from the evidence properly find that when the wire broke, a few inches north of the pole on Spalding avenue, the wire south of the break did not slip through the fastening to the insulator on that pole, nor did the wire south of that pole sag, and also that the wire north of the break did not slip through the fastening of the pole at the northeast corner of Spalding avenue and Dakota street, nor did the wire north of that pole sag. On the question whether it was proper and practicable to fasten a wire to an insulator in such manner as that the wire would not, in case it broke, slip through the fastening, the evidence that defendant's wire which broke was fastened to an insulator on a pole on each side of the break in such manner that it did not, when it broke, slip through the fastening, would properly have great weight with the jury in favor of the contention of the plaintiff that such method of fastening was proper and practicable. The fact that neither end of the wire slipped through the fastening to the insulator on the pole nearest to the break, and that the wire beyond such pole did not sag, strongly tended to show that if the wire had been fastened to an insulator on the pole at the southeast corner of Spalding avenue, in the same manner that it was fastened to the other two poles, when the wire broke, as it did, it would not have come in contact with the trolley wire.

Appellant's witnesses, Hill and Hetzner, also testified that contact between appellant's telephone wire and the trolley wire should have been guarded against by stringing wires across Dakota street from poles on

each side of the place where the telephone wire crossed that street and connecting those wires by two wires parallel with and above the trolley wire. The contention of appellant was and is that as its wires were in place before the trolley wire was put up and the Railway Company had control of the posts in Dakota street, it was not the duty of appellant, but was the duty of the Railway Company, to erect and maintain such guard wire.

Appellant maintained above the trolley wire a telephone wire which was liable to break at any time. It was its duty to use proper care to protect the public against danger from injury from its wires and to use to that end such care as is commensurate with the danger. Economy L. & P. Co. v. Hiller, 203 Ill. 518.

We think that from the evidence the jury might properly find that appellant failed to exercise proper care to guard the public against danger of injury from its wires, but was guilty of the negligence alleged in the declaration, and that plaintiff, without fault on her part, was injured as the direct result of such negligence. The verdict therefore cannot, in our opinion, be held to be against the evidence.

The plaintiff's hand was severely burned and there were slight burns on other parts of her body. As a result of the injury to the hand parts of three fingers were amputated, the little finger is attached to the palm of her hand, and she has no control over the thumb. The evidence tends to show that since the accident her health has been much impaired; that she has severe headaches, nausea and frequent vomiting and does not sleep well. Other symptoms described by the physicians indicate a weak heart and a deranged and unstable condition of her nervous system. The evidence further tends to show that there is little probability of any great improvement in her condition, and that her present condition is attributable to the shock she received from contact with a wire carrying 500 volts of electricity. We do not think that the judgment should

be reversed on the ground that the damages are excessive. In our opinion the record is free from reversible error, and the judgment is affirmed.

*Affirmed.*